IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   20 C 5920 |
| | ) | |
| NORRIS COCHRAN, Acting Secretary Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) ) | Judge Robert W. Gettleman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Illinois Insurance Guaranty Fund ("IIGF") brings a three count complaint against defendants Norris Cochran, in his official capacity as Acting Secretary of the United States Department of Health and Human Services, the United States Department of Health and Human Services ("DHHS"), and the Centers for Medicare and Medicaid Services ("CMS"). Plaintiff seeks a declaration that it is not a "primary plan" or "applicable plan" under the Medicare Act, 42 U.S.C. § 1395, et seq., to which a statutory reporting requirement applies. Defendants have moved to dismiss. (Doc. 14). For the reasons stated below, the motion is granted.

**BACKGROUND**

**1. The Medicare Act and Secondary Payer Provisions**

Under the Medicare Act, 42 U.S.C. § 1395, et seq., the federal government pays for covered medical items and services provided to eligible beneficiaries. When first enacted, Medicare paid its beneficiaries' medical expenses, even if beneficiaries could recoup them from

1

other sources, such as private insurance. Taransky v. Secretary of U.S. Dep't of Health and Human Services, 760 F.3d 307, 310 (3d Cir. 2014) (citing Zinman v. Shalala, 67 F.3d 841, 843 (9th Cir. 1995)). In 1980, Congress enacted the Medicare as a Secondary Payer Act (the "MSP Act"), 42 U.S.C. § 1395y(b)(2), in an effort to reduce costs. As its title suggests, the statute designated Medicare as a "secondary payer" of medical benefits, and thus precludes the program from providing such benefits when a "primary plan" could be expected to pay. 42 U.S.C. § 1395y(b)(2)(A); see also Haro v. Sebelius, 747 F.3d 1099, 1105 (9th Cir. 2014) (the MSP Act "forbids Medicare payments when a primary plan…is reasonably expected to make payment for the same medical care"). As relevant here, "the term 'primary plan' means…a workers' compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A).

When the primary plan cannot promptly pay a beneficiary's medical expenses, Medicare makes conditional payments to ensure that the beneficiary receives timely care. 42 U.S.C. § 1395y(b)(2)(B). Once "the beneficiary gets the healthcare she needs…Medicare is entitled to reimbursement if and when the primary payer pays her." Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 777 (11th Cir. 2002).

To aid Medicare's determination of when it should be a secondary payer, Congress added reporting requirements for certain entities in Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007. Pub. L. No. 110-173, § 111, 121 Stat. 2492, 2497-500 (2007). On a quarterly basis, applicable plans must identify and submit information on Medicare beneficiaries who have coverage under group health plans or who receive payment from liability insurance, no-fault insurance, or workers' compensation. 42 U.S.C. § 1395y(b)(7)-(8). To encourage Section 111 reporting, Congress authorized CMS to impose discretionary penalties of up to

2

$1,000 per day as a sanction for non-reporting. Congress further instructed CMS to begin rulemaking on practices for which sanctions will be imposed. 42 U.S.C. § 1395y(b)(8)(E)(i), (I). CMS has proposed criteria and procedures for imposing civil money penalties and an appeal process that includes a hearing before an administrative law judge and judicial review of a final agency decision. The final rule remains pending. As such, penalties are not currently imposed.

Defendants note that although rulemaking regarding penalties for non-reporting remains pending, "plans already have an administrative appeal route for a demand for repayment." See 42 U.S.C. § 1395ff(b). According to defendants, once a plan is determined to be responsible for payment, CMS may issue an initial determination detailing the amount of the reimbursement due to Medicare. 42 U.S.C. § 1395ff(a); 42 C.F.R. Part. 411, Subpart B. Plans may then seek administrative review of "the amount or existence of the recovery claim" in that initial determination. 42 C.F.R. § 405.924(b)(16). If the plans are dissatisfied with the determination, they may then request a hearing before an administrative law judge. The plan may then seek review from the agency's Medicare Appeals Council, which issues the Secretary's final decision. 42 C.F.R. §§ 405.1100(a), 405.1130. After exhausting administrative remedies, a plan may then seek judicial review.

**2. Plaintiff's Allegations**

The Illinois legislature created plaintiff, IIGF, in 1971. IIGF, "a creature of state statute," and is an "association whose members consist of those insurers admitted to transact a certain class of insurance businesses in the State of Illinois." Its purpose is "to provide limited financial assistance to insureds and claimants in the event their insurers become insolvent." See 215 Ill. Comp. Stat. 5/534.3, 536.2, 537.4. IIGF pays "covered claims" for an insolvent insurer and is "deemed the insolvent company" for those claims. In this respect, IIGF acts as a financial safety

3

net that "is to be considered a source of last resort." Ill. Ins. Guar. Fund. v. Va. Sur. Co., Inc., 979 N.E.2d 503, 506 (Ill. App. Ct. 2012).

In 2019, the Ninth Circuit issued an opinion regarding MSP obligations of the California Insurance Guarantee Association ("CIGA"), an entity similar to plaintiff. Cal. Ins. Guarantee Ass'n v. Azar, 940 F.3d 1061 (9th Cir. 2019). The Ninth Circuit concluded that CIGA was not a "primary plan" for MSP reimbursement purposes. Id. at 1063-64. After the Ninth Circuit's decision, CIGA requested confirmation that CMS would not hold it "responsible for compliance with reporting as mandated by Section 111." CMS responded that, in keeping with the Ninth Circuit decision, CIGA was not required to perform Section 111 reporting for payments made on behalf of insolvent member entities based in California.

On June 23, 2020, plaintiff wrote to CMS "requesting a written opinion that IIGF, like CIGA, is not a 'primary plan' or 'applicable plan' under the MSP, such that IIGF need not continue Section 111 reporting." In a response dated August 12, 2020, the Director of the Office of Financial Management, which is a sub-component of CMS, stated: "We do not agree that the CIGA decision applies" and therefore declined to render the requested opinion. IIGF then filed this lawsuit.

Plaintiff brings three claims for declaratory relief arising from the August 12, 2020, letter. First, plaintiff seeks a declaration that it is not a primary plan or applicable plan subject to Section 111 reporting. Second, plaintiff alleges that the August 12, 2020, letter is a final agency action that should be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. And third, plaintiff seeks judicial review and reversal of CMS's alleged denial of IIGF's "claim" set forth in plaintiff's June 23, 2020, letter, under 42 U.S.C. § 405 (g) and § 1395ii. Plaintiff alleges subject matter jurisdiction under: (1) 28 U.S.C. § 1331, federal question jurisdiction; (2)

4

28 U.S.C. §§ 2201-02, the Declaratory Judgment Act; (3) 5 U.S.C. § 702, the APA; and (4) various provisions of the Medicare Act, including 42 U.S.C. §§ 405(g), 1395ii, and 1395y(b).

## DISCUSSION

The government moves to dismiss on two grounds: (1) lack of subject matter jurisdiction; and (2) lack of standing. The court shall discuss each argument in turn.

**1. Subject Matter Jurisdiction**

In its complaint, plaintiff alleged four jurisdictional possibilities: (1) 28 U.S.C. § 1331, federal question jurisdiction; (2) 28 U.S.C. §§ 2201-02, the Declaratory Judgment Act; (3) 5 U.S.C. § 702, the APA; and (4) various provisions of the Medicare Act, including 42 U.S.C. §§ 405(g), 1395ii, and 1395y(b). In its opening brief, defendants argued that jurisdiction must arise, if at all, under the Medicare Act, not § 1331, not the APA, and not the Declaratory Judgment Act. In response, plaintiff did not address any of defendants' arguments regarding § 1331, the APA, or the Declaratory Judgment Act. Plaintiff has accordingly abandoned those arguments and they are waived.[1] The court will address the remaining jurisdictional basis under Section 405(g) of the Medicare Act.

The Supreme Court has held that § 405(g) imposes two distinct preconditions for obtaining judicial review of covered Medicare claims. First, the plaintiff must have "presented" the claim to the Secretary. This requirement is not waivable, because without presentment "there can be no 'decision' of any type," which § 405(g) clearly requires. Matthews v. Eldridge, 424 U.S. 319, 328 (1976); see also Am. Hospital Ass'n. v. Azar, 895 F.3d 822, 825-26 (D.C. Cir. 2018). Second, the plaintiff must fully exhaust all administrative remedies, though this more demanding requirement is waivable. Id.

---

[1] Even if plaintiff had not waived these jurisdictional arguments, defendants are correct that the only potential jurisdictional basis arises under the Medicare Act.

When plaintiff filed this lawsuit, plaintiff had not challenged its status as a "primary payer" in the context of a specific administrative claim for payment.[2] Rather, plaintiff merely provided a letter requesting an opinion on a court decision in the abstract. Plaintiff's June 23, 2020, letter cannot be a "concrete claim for reimbursement" that satisfies Medicare's presentment requirements. See Heckler v. Ringer, 466 U.S. 602, 621-22 (1984) (finding no jurisdiction to provide an advisory opinion on coverage for future medical care); Am. Hosp. Ass'n, 895 F.3d at 827 (D.C. Cir. 2018) (holding that "submitting comments in response to a proposed rule about reimbursement rates—wholly detached from any specific payment dispute" does not satisfy presentment requirements); Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13-14 (2000) (noting that 42 U.S.C. § 405 (g) "demands the 'channeling' of virtually all legal attacks through the agency"). Because plaintiff has not submitted a specific claim for payment, plaintiff has not satisfied Medicare's presentment requirements.

Plaintiff has also failed to exhaust administrative remedies. Indeed, plaintiff does not even claim exhaustion, asserting instead that "[n]o administrative process exists for IIGF to exhaust." Plaintiff argues that "[t]he administrative process is…wholly inapplicable to this case because IIGF is not challenging any reimbursement demand by the government;" instead, plaintiff is merely seeking a declaration that it is not an applicable plan under Section 111. Thus, according to plaintiff, there is no administrative process to exhaust, and dismissal would result in "no review at all." See Ill. Council, at 19-20 (interpreting the exception to administrative exhaustion requirements in Bowen v. Mich. Academy of Family Physicians, 476 U.S. 667 (1986)). Defendants counter that Section 111 reporting is inextricably linked to the coordination of Medicare benefits, proper payment of Medicare claims, and the recovery of funds owed to

---

[2] Plaintiff, in fact, concedes this point in its brief, claiming that it "is not challenging any reimbursement demand by the government."

Medicare from an applicable plan, such that a request for an opinion on reporting obligations in the abstract makes little sense without a specific claim for payment. According to defendants, plaintiff has ignored the available administrative process, and disingenuously claims that no review is available.

The court agrees with defendants. The various statutory provisions must be read together, and a determination regarding Section 111 reporting must be made during administrative review of a specific claim for recovery. See Ill. Council, 529 U.S. at 7 ("The route that [plaintiff] did not follow, the special Medicare review route, is set forth in a complex set of statutory provisions, which must be read together."). Plaintiff's request for an opinion in the abstract cannot exempt plaintiff from the administrative process. Plaintiff's arguments to the contrary ignore the fact that "virtually all legal attacks" must be channeled through Medicare's administrative process. Id. at 13-14. Finally, the court is unconvinced that dismissal of this suit would result in no review at all. Rather, dismissal would result in postponement of review. Id. at 19 (noting the difference "between a total preclusion of review and a postponement of review").

It is clear to the court that plaintiff must administratively exhaust its claim before filing a lawsuit in this court. Plaintiff has failed to do so. Consequently, plaintiff's claims are dismissed for lack of subject matter jurisdiction.

## 2. Standing

Plaintiff's complaint must be dismissed for the additional reason that plaintiff has failed to demonstrate Article III standing. To demonstrate standing, a plaintiff must show: (1) an injury-in-fact; (2) that is fairly traceable to the challenged agency action; and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555,

560-61 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly…allege facts demonstrating' each element." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). The parties contest only the first element—injury-in-fact. The injury-in-fact requirement underpins a "longstanding legal doctrine preventing [federal courts] from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law." Carney v. Adams, 141 S.Ct. 493, 501 (2020).

Defendants argue that plaintiff has failed to demonstrate injury-in-fact because plaintiff merely alleges a risk of potential injury at some undefined point in the future. The complaint alleges that plaintiff "requires prompt resolution of this controversy because of substantial potential penalties for failing to comply with Section 111." (emphasis added). In its response brief, plaintiff also claims that "Section 111 reporting is a burdensome drain on IIGF's resources," and that plaintiff "incurs an administrative burden to complete the Section 111 reporting each time it pays a claimant who might receive Medicare benefits."

"An allegation of future injury may suffice if the threatened injury is 'certainly impending' or there is a ''substantial risk' that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)). For certain government actions, a court may find standing for a pre-enforcement challenge "under circumstances that render the threatened enforcement sufficiently imminent," and if the plaintiff "alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Id. at 159.

Plaintiff alleges no "constitutional interest," and cannot demonstrate a credible threat of imminent enforcement. Although CMS has statutory authority to impose penalties, CMS has not yet promulgated a final rule on how and when it may impose penalties. Thus, CMS is not currently imposing penalties, and there is no indication of when it will do so in the future. Even then, imposition of penalties is discretionary and will depend on various factual circumstances. Plaintiff has not convincingly demonstrated that any enforcement of this rule is imminent. The mere potential for a penalty at some indefinite point in the future is insufficient to demonstrate injury-in-fact.

Plaintiff's second argument—that Section 111 reporting presents an administrative burden—also fails. For a "burden of compliance" to constitute an injury-in-fact, plaintiffs need to provide additional, specific facts that demonstrate how their practices will change or become more costly. See, for example, Crane v. Johnson, 783 F.3d 244, 252 (5th Cir. 2015) (arguments about a "burden of compliance" insufficient to show injury where plaintiffs did not allege "with any specificity how their practices will change in a substantial way," or become more difficult, as a result of a federal program). Plaintiff provides bare conclusions without specifying what the administrative burden entails.[3] Plaintiff's bare conclusions are insufficient to demonstrate an injury-in-fact as a result of an increased administrative burden.

Plaintiff has failed to demonstrate an injury-in-fact. Consequently, plaintiff lacks standing.

---

[3] According to defendants' user guide, the estimated average time to comply with the reporting requirement is 7.9 minutes per response.

## **CONCLUSION**

For the reasons stated above, defendant's motion [Doc. 14] is granted. Plaintiff's complaint is dismissed without prejudice.

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: April 23, 2021**